# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

           Plaintiff,

v.

PAUL S. KEMPER, JASON WELLS, STEPHANIE ONEIL, LIEUTENANT CRUZ, JOHN/JANE DOE 1–21, LEAH M. ZENI, EMILY DAVIDSON, and CINDY ODONNELL,

           Defendants.

Case No. 21-CV-622-JPS

**ORDER**

**1.    INTRODUCTION**

To start, the Court will provide some clarification and background. Initially, this case had multiple pro se plaintiffs—a group of inmates at Racine Correctional Institution ("RCI")—who filed a complaint alleging that Defendants violated their First, Fifth, Eighth, and Fourteenth Amendment rights. (Docket #1). The plaintiffs filed a motion for class certification, (Docket #3), and a motion to appoint counsel, (Docket #2). On June 7, 2021, the Court denied the plaintiffs' motion for class certification and denied the plaintiffs' motion to appoint counsel. (Docket #23). Additionally, the Court ordered that the plaintiffs wishing to proceed in the case jointly sign and file one complaint by July 7, 2021. (*Id.*) The Court warned that any plaintiff that did not sign the complaint and/or did not file a motion to proceed *in forma pauperis* or pay the full $402.00 filing fee by July 7, 2021, would be dismissed from the case without prejudice. (*Id.*) On July 19, 2021, the Court dismissed all plaintiffs except Terrance J. Shaw

because they failed to file a jointly-signed complaint and failed to file a motion to proceed *in forma pauperis* or paid the full $402.00 filing fee by the July 7, 2021 deadline. (Docket #29).

Accordingly, this case now only has one plaintiff, Terrance J. Shaw, a former inmate of RCI. Plaintiff's pro se complaint under 42 U.S.C. § 1983 alleges that Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights. (Docket #1). Additionally, on July 27, 2021, Plaintiff filed another motion to appoint counsel, (Docket #31), and motion for class certification, (Docket #34). This Order screens Plaintiff's complaint and resolves his pending motions.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, a court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, a court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone acting under the color of state law deprived him of a right secured by the Constitution or the laws of the United States. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

The alleged events took place at RCI during the COVID-19 pandemic. (Docket #1). Plaintiff names the following RCI employees as Defendants: Warden Paul S. Kemper ("Kemper"), Deputy Warden Jason Wells ("Wells"), security director Stephanie O'Neil ("O'Neil"), supervisor Lieutenant Cruz ("Cruz"), and twenty-one John/Jane Doe correctional officers (the "Doe Officers"). (*Id.* at 2–6). Additionally, Plaintiff has named inmate complaint examiner ("ICE") Leah M. Zeni ("ICE Zeni"), corrections complaint examiner ("CCE") Emily Davidson ("CCE Davidson"), and Office of the Secretary ("Secretary") Cindy O'Donnell ("Secretary O'Donnell") as Defendants. (*Id.* at 6). Plaintiff states that all Defendants are sued in their official and individual capacities. (*Id.* at 12).

On March 4, 2021, around 9:30 p.m., Plaintiff and the approximately 192 other inmates on the Kenosha Housing Unit at RCI were subjected to a "shake-down" search of their cells. (Docket #1 at 6). The search was

Page 3 of 11
Case 2:21-cv-00622-JPS   Filed 11/23/21   Page 3 of 11   Document 37

authorized by O'Neil and carried out by Cruz and the Doe Officers. (*Id.* at 6). Plaintiff asserts that Cruz and the Doe Officers were not wearing face masks during the search. (*Id.* at 7). While the search was being conducted, the Kenosha Unit inmates were forced to go outside in the freezing cold without coats, socks, hats, gloves, or scarves, and walk approximately 100 yards to the RCI Gym where they were directed to stay until the search was completed. (*Id.* at 6–7). While inside the Gym, Plaintiff and the other Kenosha Unit inmates were forced to sit side-by-side on the bleachers for two hours, putting them at risk of contracting COVID-19. (*Id.* at 6–7). Plaintiff alleges that requiring the Kenosha Unit inmates to sit side-by-side was a violation of Wisconsin's COVID-19 pandemic procedures which required six feet of separation between the inmates. (*Id.* 6–8). Because the COVID-19 procedures were not followed, Plaintiff claims that evening was a "super-spreader event." (*Id.*)

Additionally, Plaintiff states that RCI closed the Gym to all inmates during the COVID-19 pandemic because it did not have enough space for the inmates to adequately socially distance. (*Id.* at 8). Plaintiff also states that during the times when the Gym was open to inmates during the COVID-19 pandemic, RCI only allowed half of a housing unit to occupy it at one time. (*Id.*) However, on March 4, 2021, the entire Kenosha Unit— consisting of approximately 192 inmates—was put inside the Gym to wait while the search was completed. (*Id.*)

On March 5, 2021, Plaintiff filed an inmate complaint regarding the March 4, 2021 event. (Docket #1-1 at 1–2). In the inmate complaint, Plaintiff stated that the RCI security staff and Cruz violated Plaintiff's medical health rules and put Plaintiff's "[l]ife at [r]isk of exposure to COVID-19 from a Super-Spreader event" that did not follow the RCI Health Service

Unit ("HSU") and Wisconsin's COVID-19 protocol regarding social distancing. (*Id.*)

> This discretionary (unnecessary) event exposed me to the Risk of exposure to Covid-19 in that close contact claustrophobic environment orchestrated by Lieutenant Cruz and his Security Squad that was forced on me.
>
> . . . .
>
> I also want to aver that the Warden, Deputy Warden, HSUM Ms. Vasquez, and RCI's Security Director were all knowledgeable of this Super Spreader Event being Perpetrated on me (and all inmates of Kenosha cell block), and FAILED to prevent it or enforce the Covid-19 Social Distancing Health Protocols that are put in place by the State. So they are ALL co-conspirators, knowingly and intentionally with reckless disregard and Deliberate Indifference to intentionally and unnecessarily putting my Health and Safety at risk.

(*Id.*) Ultimately, Plaintiff's inmate complaint was dismissed, and his appeal was dismissed as well. (Docket #1 at 7–9).

On March 9, 2021, RCI's Kenosha Unit was put on lockdown because new COVID-19 cases were discovered during testing. (*Id.* at 7). Plaintiff alleges that the new COVID-19 cases were a result of the "super-spreader event" on March 4, 2021. (*Id.*) However, Plaintiff does not allege that he contracted COVID-19.

Lastly, Plaintiff states that this "Action Is for Money Damages . . . for [Eighth] Amendment Violations" and requests the following relief: (1) "Declaratory Judgment, or an Order that RCI Violated a State Protection Covid-19 Mandate, and the workplace did Not follow the U.S. Constitution;" (2) "Compensatory Damages pursuant to Fed. R. Civ. P. 23(b)(3) from each of the Defendants to each Class Action Plaintiff the amount of Two-Hundred and Fifty Thousand ($250,000.00) Dollars;" (3)

"Punitive Damages pursuant to Fed. R. Civ. P. 23(b)(3) from <u>each</u> of the Defendants to <u>each</u> Class Action Plaintiff the amount of Two-Hundred and Fifty Thousand ($250,000.00) Dollars;" and (4) "Presumed Damages pursuant to Fed. R. Civ. P. 23(b)(3) from <u>each</u> of the Defendants to <u>each</u> Class Action Plaintiff the amount of Two-Hundred and Fifty Thousand ($250,000.00) Dollars." (Docket #1 at 1, 12).

### 2.3 Analysis

Plaintiff's claims invoke his rights under the Eighth Amendment. To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that officials were deliberately indifferent to conditions of confinement that constituted an "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (holding that an Eighth Amendment violation arises when prisoners are deprived of "the minimal civilized measure of life's necessities"). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

In order to demonstrate a violation of the Eighth Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* at 834 (quotations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The second requirement is that the prison official was deliberately indifferent "to inmate health or safety," meaning that the prison official was

both aware of and disregarded "an excessive risk to inmate health or safety." *Id*. at 834, 837.

### 2.3.1 Outside in Freezing Temperatures

Plaintiff claims that his Eighth Amendment rights were violated when he and the other Kenosha Unit inmates were forced to walk outside in freezing temperatures, without coats, socks, hats, gloves, or scarves, and walk approximately 100 yards to the RCI Gym. Plaintiff does not allege that he was subjected to the freezing temperatures for a long period of time or that he suffered any injury as a result of going outside to travel 100 yards. Although undoubtably uncomfortable, this event is not sufficiently serious to rise to the level of a Constitutional violation. *See Mays v. Springborn*, 575 F.3d 643, 648–49 (7th Cir. 2009) (affirming dismissal of plaintiff's claim where prisoner did not show that "he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter"); *Cf. Gillis v. Litscher,* 468 F.3d 488, 490 (7th Cir. 2006) (prisoner forced to sleep naked in cold cell had to walk around 14 hours a day to keep warm); *Dixon v. Godinez,* 114 F.3d 640, 642–44 (7th Cir. 1997) (over three consecutive winters prisoner was provided inadequate clothing and bedding and could not keep warm in cell with average temperature of forty degrees). Plaintiff's allegations, taken as true, do not constitute "extreme deprivations" that denied him the minimal life necessities. Therefore, the Court will dismiss Plaintiff's claims arising from the 100-yard walk outside in freezing temperatures for failure to state a claim.

### 2.3.2 Risk of COVID-19 Exposure

Plaintiff claims that his Eighth Amendment rights were violated when he was forced to sit side-by-side on the Gym bleachers for two hours, which put him at risk of contracting COVID-19. Plaintiff alleges that

Page 7 of 11
Case 2:21-cv-00622-JPS   Filed 11/23/21   Page 7 of 11   Document 37

requiring the Kenosha Unit inmates to sit side-by-side with other inmates was a violation of the RCI HSU and Wisconsin's COVID-19 pandemic protocols, which required six feet of separation between the inmates. For the reasons stated below, the Court finds that Plaintiff has failed to state a claim on these allegations.

First, the Seventh Circuit has explicitly explained that "CDC Guidelines—like other administrative guidance—do not themselves set a constitutional standard." *Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020). "[W]hile the recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Id.* Therefore, Plaintiff's claim that Defendants violated the CDC guidelines which the RCI HSU and the State of Wisconsin incorporated into their COVID-19 protocols do not state a federal or constitutional claim under § 1983.

Second, violations of state laws or prison policies do not constitute a violation of the constitution under § 1983. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) ("a violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983"); *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]his court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'") (citations omitted). Accordingly, Plaintiff's allegations that Defendants violated the RCI HSU and Wisconsin's COVID-19 protocols do not state a claim under § 1983.

Third, Plaintiff brings this suit under 42 U.S.C. § 1983, which creates a tort remedy for those injured by the deprivation of a constitutional right.

*See Roe v. Elyea*, 631 F.3d 843, 863–64 (7th Cir. 2011). In order to succeed in a § 1983 suit, a plaintiff must "establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Id.* at 864 (quoting *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019). Plaintiff has stated that this action is for "money damages" and he has not requested any injunctive relief. However, Plaintiff has not alleged that he has suffered any injury from the alleged Eighth Amendment violation.

Instead, Plaintiff continually states that Defendants subjected him to the risk of exposure to COVID-19 due to the conditions in the Gym. Plaintiff's focus on the *risk* of harm, rather than on any injuries he suffered, demonstrates that he "want[s] to recover money damages solely for the risk to his life," to which he alleges Defendants were deliberately indifferent. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). But, "to the extent [Plaintiff] seeks damages based on the risk of what *could have* happened to him as a result, that risk is not actionable under § 1983 without actual injury." *Walker v. Leibert*, 844 F. App'x 920, 922 (7th Cir. 2021) (citing *Lord*, 952 F.3d at 905). As the Seventh Circuit recently stated in *Henry v. Deshler*, No. 20-2185, 2021 WL 2838400 (7th Cir. July 8, 2021), "unless a prisoner is challenging a failure to protect him from a serious risk of *future* harm, a claim of deliberate indifference cannot be based on a risk that never came to pass." *Id.* at *2 (internal citations omitted). Therefore, because Plaintiff has not alleged that he suffered any injury from Defendants' deliberate indifference, he has failed to state a claim. *See Townsend v. Lucas*, No. 20-CV-1126-PP, 2020 WL 7209759, at *4 (E.D. Wis. Dec. 7, 2020).

### 3. CONCLUSION

In sum, Plaintiff has failed to state a claim, and the Court will dismiss his case. Accordingly, the Court will deny Plaintiff's as moot pending motion to appoint counsel, (Docket #31), and motion to certify class, (Docket #34).

Accordingly,

**IT IS ORDERED** that this case be and same is hereby **DISMISSED with prejudice** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Docket #31) and motion to certify class (Docket #34) be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil

Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge